Lucy **DAILEY**, Plaintiff-Appellee,

v.

**RUSSANN LUMBER COMPANY, INC.,**
and Casualty Reciprocal Exchange,
Defendants-Appellants.

Supreme Court of Tennessee.

Dec. 17, 1979.

Fred E. Ivy, Jr., Wilson, McRae, Ivy, Sevier, McTyier & Strain, Memphis, for defendants-appellants.

John E. McManus, Owens, Moore & McManus, Memphis, for plaintiff-appellee.

## OPINION

HENRY, Justice.

In this workmen's compensation action the Trial Judge awarded full statutory benefits to the widow of a deceased workman. Reviewing the case under the familiar material evidence standard, we affirm the judgment.

### I.

The deceased workman was employed as a truck driver for Russann Lumber Company. On the day of his death he reported for work at 6:54 a.m. The undisputed evidence shows that he was in apparent good health and good spirits and voiced no complaint. He was forty-six years old at the time and his prior medical history was such that he did not even have a family doctor.

During the day he made five deliveries of lumber; a smaller number than usual. The size of the deliveries varied but none was significantly large. The lumber was loaded on the truck by others. His only responsibility, at that time, was to tie the lumber down using a chain and secure it by tightening or "booming" the chain on both sides. The proof is that these chains weighed some thirty or forty-five pounds and it took "tremendous" pressure to tighten them.

When deliveries were made, the lumber was dumped mechanically from the truck or removed by lift. In either event, it was necessary for him to loosen the chains and, after the load was deposited, to place them back on the truck. All this involved substantial stooping, lifting, bending, climbing and the use of physical effort and force.

He made his last delivery at approximately 5:00 p.m. and was last seen alive around 5:15 p.m. His body was discovered at approximately 5:45 p.m. The time of death was estimated at 5:20 p.m., and this is the time of death as treated by the parties.

Dr. Jerry T. Francisco, Professor of pathology at the University of Tennessee and County Medical Examiner for Shelby County, was contacted, and as medical examiner, viewed and examined the body and investigated the surrounding circumstances. On his report, he listed the cause of death as arteriosclerotic heart disease which he classified as a heart attack. Dr. Francisco stated that this was a statistical diagnosis and conceded that it was not a positive evidentiary finding; however, based upon the sum total of all relevant factors, he stated that his diagnosis rested on a reasonable degree of medical certainty.

Dr. Otis S. Warr, III, a medical doctor specializing in internal medicine—cardiovascular diseases, testified as an expert witness and responded to a hypothetical question which fairly embraced all the relevant facts, by saying:

In all probability such exertion as you described did in part contribute to a heart attack. . . .

Dr. Eugene J. Spiotta, Sr., a specialist in the field of internal medicine, testified for the employer. His testimony was persuasive, articulate and convincing. He testified that the activities of the decedent on the day of death did not have anything to do with his death.

Thus, as is so often true in workmen's compensation cases, the Chancellor had to choose among eminently qualified physicians who expressed different views. This is the exclusive province of the trial judge. It matters not to the reviewing court that the preponderance, or greater weight, or better evidence may have been to the contrary. We do not weigh evidence in workmen's compensation cases. Our province—and our only province—is to determine whether the findings of the trial judge are supported by material evidence. *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn.1976).

### II.

It is insisted for the employer on this appeal that the deceased deviated from his employment and his widow is precluded from recovery.

■ The body was found lying some eight to ten feet from his truck and at or on the front steps leading to the house of a brother-in-law. While the facts are not clearly developed in the record, apparently this was in the opposite direction from the lumberyard of the employer.

We do not regard this as a prohibited deviation. The reason for the detour does not appear. The Chancellor could not "rule out the real possibility that the reason this man was headed over to his brother-in-law's is because he was indeed in some physical trouble." Perhaps so; the record does not enable us to determine the precise purpose of the visit. Aside from the unquestioned fact that the detour or deviation did not cause or contribute to the cause of death and is, therefore, of no consequence, there is other evidence which convinces us the deceased's conduct was not improper.

First, after 5:00 p.m., when the working day was over, and nothing remained except to return the truck, there was little incentive for a deviation.

Second, the president of Russann described the nature and character of this employee in glowing terms. He said he was "one of the finest people that ever lived"; that "he was as good a truck driver as I've ever had on the payroll"; that he "didn't goof off"; and that he was a conscientious and loyal employee. The shipping clerk for Russann similarly gave him a splendid reputation as a worker and said, "he wasn't the type of man that would go off somewhere and waste time and things." From this record we do not believe and cannot find that deceased was off on a "frolic" of his own.

It is not every detour or deviation that precludes coverage. Akin to both this and the previous proposition is our holding in

*Lawrence County Highway Dept. v. Hardiman*, 531 S.W.2d 792 (Tenn.1975). There we sustained an award based on a heart attack, precipitated by physical activity and exertion while on the job, and which occurred in an automobile on the way home from work.

More analogous to the instant case is *Watson v. United States Fire Insurance Co.*, 577 S.W.2d 668 (Tenn.1979). The claimant, employed in Knoxville, was authorized to attend a training program at Paris Landing State Park, near Paris. He journeyed to Jackson, some forty-five miles southwest of Paris Landing and not on the route from Knoxville to Paris Landing, where he spent the night and was injured the next morning enroute to the park. *Inter alia*, we held that there was no indication that Watson's departure "materially increased the risks of the journey."

Given the time interval in this case, we find not the slightest suggestion in this record that deceased's detour or deviation had any bearing on his subsequent heart attack and death.

We, therefore, hold that material evidence supports the Chancellor's finding that deceased's death was from a heart attack which arose out of his employment and within the scope and course thereof.

Affirmed.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concurring.